UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LUIS E. ALAMO and            : CIVIL NO: 1:11-CV-02146
RITA C. SABELLI-ALAMO,       :
                             :
          Plaintiffs         :
                             : (Judge Caldwell)
     v.                      :
                             : (Magistrate Judge Smyser)
MARIROSA LAMAS, *et al.*,     :
                             :
          Defendants         :

**REPORT AND RECOMMENDATION**

     The plaintiffs in this case are husband and wife.  The husband, a state prisoner, challenges his disciplinary sentence for a prison visiting room infraction, his placement in administrative custody, and his transfer to another institution.  Both husband and wife challenge the suspension of the wife's visiting privileges.  The amended complaint fails to state a claim upon which relief may be granted.  Accordingly, we recommend that the amended complaint be dismissed and that the case file be closed.

I. Background and Procedural History.

The plaintiffs commenced this 42 U.S.C. § 1983 case by filing a complaint.  Only Luis Alamo signed the complaint.  He filed an application for leave to proceed *in forma pauperis.*

The complaint names the following employees and officials of the State Correctional Institution at Rockview as defendants: Superintendent Marirosa Lamas, Deputy Superintendent Brian H. Thompson, Deputy Superintendent Robert J. Marsh, Captain Eaton, and Lieutenant Vance.  The complaint also names John Kerestes, the Superintendent of the State Correctional Institution at Mahanoy, as a defendant.  It further names the following officials of the Pennsylvania Department of Corrections as defendants: Deputy Secretary Michael D. Kloposki, Deputy Secretary Shirley R. Smeal-Moore, and Acting Secretary John E. Wetzel.

Plaintiff Luis Alamo alleges the following facts in the complaint.

2

In April of 2010, the plaintiff was visiting with his wife when the visiting room officer terminated the visit. The plaintiff was charged with violating a visiting regulation, and he pleaded guilty to that charge. The hearing examiner sanctioned him with 75 days of disciplinary custody in the Restricted Housing Unit. The plaintiff appealed the hearing examiner's decision on the ground that the punishment imposed was disproportionate to the offense. The program review committee, which included defendants Thompson and Marsh, sustained the hearing examiner's decision.

A few days after the visiting room incident, defendant Lamas suspended the visiting privileges of the plaintiff's wife for an indefinite length of time. The plaintiff's wife appealed that decision, and defendant Moore-Smeal upheld defendant Lamas' decision.

In September of 2010, after he had completed his 75 days in the Restricted Housing Unit, the plaintiff was placed in administrative custody purportedly because he was a danger to himself and others. An administrative hearing was conducted in his absence. Claiming that he had been denied procedural

due process, the plaintiff appealed his administrative custody confinement.  Defendant Lamas denied his appeals.  A few weeks later, the plaintiff questioned defendant Vance about why he had been placed in administrative custody and who had made the decision to place him there.  Defendant Vance said that he had made the decision based on information given to him by another inmate who had been caught trying to escape from his cell. Defendant Vance told the plaintiff that he was investigating the matter.  Later, when asked about the outcome of the investigation, defendant Eaton told the plaintiff that she had been ordered to submit paperwork for his transfer and that he was on his way out of the institution.

In October of 2010, the plaintiff was transferred from SCI-Rockview to SCI-Mahanoy, where he was segregated from the general population for 15 days.  At SCI-Mahanoy, the plaintiff was told that he was under surveillance and that it would be a while before visiting privileges with his wife would be reinstated.

In December of 2010, the plaintiff's wife requested that defendant Kerestes reinstate her visiting privileges.

4

That request was denied, and defendant Kerestes told her to resubmit her request after January of 2012.  The plaintiff's wife appealed that decision to defendant Wetzel.  She received a response from defendant Kloposki.  A few days later she received another response, this one from defendant Wetzel. Defendant Wetzel stated that he supported defendant Lamas' decision.  He also stated, however, that he was recommending non-contact visits and that she should request non-contact visits in a letter to defendant Kerestes.  The plaintiff's wife did so, but defendant Kerestes denied her request.

The plaintiff claims that the defendants violated his procedural due process rights.  He is seeking declaratory and injunctive relief as well as compensatory and punitive damages.

By an Order dated November 18, 2011, we granted Luis Alamo's application for leave to proceed *in forma pauperis*.  We also reviewed the complaint and determined that it fails to state a claim upon which relief may be granted.  We granted leave to file an amended complaint.  On December 7, 2011, the plaintiffs filed an amended complaint.  Both Luis Alamo and Rita Sabelli-Alamo signed the amended complaint.

5

The amended complaint contains few factual allegations. It consists mostly of argument.  We conclude that the amended complaint fails to state a claim upon which relief may be granted.


II.  Pleading Standards.

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009).  The statement required by Rule 8(a)(2) need only give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).  Detailed factual allegations are not required. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  But more is required than labels, conclusions and a formulaic recitation of the elements of a cause of action. *Id.*  "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside,* 578 F.3d 203, 211 (3d Cir. 2009).  "A complaint has to "show" such an entitlement with its facts." *Id.*  "While

legal conclusions can provide the framework of a complaint,
they must be supported by factual allegations." *Ashcroft,
supra,* 129 S.Ct. at 1950.  "When there are well-pleaded factual
allegations, a court should assume their veracity and then
determine whether they plausibly give rise to an entitlement to
relief." *Id.*

"[A] complaint must contain sufficient factual matter,
accepted as true, to 'state a claim to relief that is plausible
on its face.'" *Ashcroft, supra,* 129 S.Ct. at 1949 (quoting
*Twombly*, *supra,* 550 U.S. at 570).  "A claim has facial
plausibility when the plaintiff pleads factual content that
allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged." *Id.*  "The
plausibility standard is not akin to a 'probability
requirement,' but it asks for more than a sheer possibility
that a defendant has acted unlawfully." *Id.*

A complaint filed by a *pro se* litigant is to be
liberally construed and "'however inartfully pleaded, must be
held to less stringent standards than formal pleadings drafted

by lawyers.'" *Erickson, supra,* 551 U.S. at 94 (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)).

III. Discussion.

We review the amended complaint pursuant to 28 U.S.C. § 1915A which provides, in pertinent part:

> **(a) Screening.**- The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> **(b) Grounds for dismissal.**- On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-
> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

This is a 42 U.S.C. § 1983 case.  "Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws

8

of the United States." *Shuman v. Penn Manor School Dist.,* 422
F.3d 141, 146 (3d Cir. 2005).  Section 1983 "does not create
any new substantive rights but instead provides a remedy for
the violation of a federal constitutional or statutory right."
*Id.*  "To state a claim under § 1983, a plaintiff 'must allege
both a deprivation of a federally protected right and that this
deprivation was committed by one acting under color of state
law.'" *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d
Cir. 2005)(quoting *Lake v. Arnold*, 112 F.3d 682, 689 (3d Cir.
1997)).

Plaintiff Luis Alamo claims that he was denied due
process. The Fourteenth Amendment provides that a state shall
not "deprive any person of life, liberty, or property, without
due process of law."  A due process claim requires a two-part
analysis.  First, the court must determine whether the interest
asserted by the plaintiff is within the scope of protection of
life, liberty, or property found in the Due Process Clause.
*Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000).  Second, if
the interest is one that is protected by the Due Process
Clause, "the question then becomes what process is due to
protect it." *Id.*

In *Sandin v. Conner*, 515 U.S. 472 (1995), the United States Supreme Court, addressing the question of when the state can create liberty interests protected by the Due Process Clause, held that:

> States may under certain circumstances create liberty interests which are protected by the Due Process Clause.  But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Id*. at 483-84.

In *Sandin*, the inmate was sentenced to thirty days of disciplinary confinement in the Special Holding Unit.  As a result of the prisoner's disciplinary segregation he "had to spend his entire time alone in his cell (with the exception of 50 minutes each day on average for brief exercise and shower periods, during which he nonetheless remained isolated from other inmates and was constrained by leg irons and waist chains)." *Id*. at 494 (Breyer, J. dissenting).  The Court concluded that the inmate's thirty days in the Special Holding Unit, considered within the context of prison confinement, did not impose the type of atypical and significant deprivation of

10

liberty in which the state could be seen to have created a
liberty interest. *Id.* at 486.   The Court noted that
disciplinary confinement at the prison in question, with only
insignificant exceptions, mirrored conditions imposed on
inmates in administrative and protective custody; that based on
a comparison of inmates inside of and outside of disciplinary
segregation, placement in segregation for thirty days did not
work a major disruption in the inmate's environment; that
disciplinary action did not inevitably affect the duration of
the inmate's sentence; and that the "regime to which [the
inmate] was subjected was within the range of confinement to be
normally expected for one serving an indeterminate term of 30
years to life." *Id*. at 486-87.

        "After *Sandin,* it is clear that the touchstone of the
inquiry into the existence of a protected, state-created
liberty interest in avoiding restrictive conditions of
confinement is not the language of regulations regarding those
conditions but the nature of those conditions themselves 'in
relation to the ordinary incidents of prison life.'" *Wilkinson
v. Austin*, 545 U.S. 209, 223 (2005)(quoting *Sandin, supra,* 515
U.S. at 484).   In deciding whether a protected liberty interest

exists under *Sandin*, we consider the duration of the
confinement and the conditions of that confinement in relation
to other prison conditions. *Mitchell v. Horn,* 318 F.3d 523, 532
(3d Cir. 2003).  Whether a protected liberty interest exists
under *Sandin* requires inquiry into the specific facts of the
case. *Id.* at 533.

The plaintiff has not alleged facts from which it can
reasonably be inferred that he was subjected to an atypical and
significant hardship in relation to the ordinary incidents of
prison life such that he had an interest protected by the Due
Process Clause.

First, "inmates are generally not entitled to
procedural due process in prison disciplinary hearings because
the sanctions resulting from those hearings do not usually
affect a protected liberty interest." *Burns v. Pennsylvania
Dept. of Corrections,* 642 F.3d  163, 171 (3d Cir. 2011).
Although the plaintiff does not allege in his amended complaint
how long he was in disciplinary custody, in his original
complaint he alleged that he was in disciplinary custody for
seventy-five days.  Seventy-five days in disciplinary custody

by itself, however, does not amount to an atypical and
significant hardship. *See Smith v. Mensinger,* 293 F.3d 641, 654
(3d Cir. 2002)(holding that seven months of disciplinary
confinement was not an atypical and significant hardship).  The
plaintiff also has not alleged any facts showing that the
conditions to which he was subjected while in disciplinary
confinement amounted to an atypical and significant hardship in
relation to the ordinary incidents of prison life.
Accordingly, the complaint fails to state a due process claim
upon which relief may be granted regarding his disciplinary
sentence for the visiting room infraction.

      Second, the plaintiff's confinement in administrative
custody was not an atypical and significant hardship.  He was
in administrative custody for less than three months (September
of 2010 to November of 2010, when he was released to the
general population at SCI-Mahanoy).[1]  Although an unduly
lengthy period in administrative confinement may amount to an
atypical and significant hardship on the inmate in relation to
the ordinary incidents of prison life, the plaintiff has not
alleged such an unduly lengthy confinement. *See generally*

---

1.  These dates are taken from the original complaint.

13

*Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir. 1997)(holding that a Pennsylvania prisoner's confinement in administrative custody for 15 months did not implicate a liberty interest). Moreover, the plaintiff has not alleged that he was denied basic necessities or otherwise subjected to atypical and significant hardships in relation to the ordinary incidents of prison life while in administrative custody. Accordingly, the complaint fails to state a due process claim upon which relief may be granted based on the plaintiff's confinement in administrative custody.

The plaintiff also complains about being transferred from SCI-Rockview to SCI-Mahanoy. "It is well established that the decision where to house inmates is at the core of prison administrators' expertise." *McKune v. Lile*, 536 U.S. 24, 39 (2002). An inmate does not have a due process right to remain in or be transferred to any particular prison. *See Olim v. Wakinekona,* 461 U.S. 238 (1983). Accordingly, the complaint fails to state a due process claim upon which relief may be granted based on his transfer.

14

The plaintiff intimates that he was transferred in retaliation for pursuing an administrative appeal.  He also suggests that he and his wife were targeted because prison officials disapprove of their relationship because the plaintiff's wife is a former Department of Corrections employee.

A prisoner claiming that a defendant has retaliated against him for exercising his constitutional rights must allege facts showing that: 1) his conduct was constitutionally protected; 2) he suffered "adverse action" at the hands of the defendant; and 3) his constitutionally protected conduct was a substantial or motivating factor in the decision of the defendant. *Carter v. McGrady,* 292 F.3d 152, 158 (3d Cir. 2002). "Once a prisoner has made his *prima facie* case, the burden shifts to the defendant to prove by a preponderance of the evidence that [he or she] 'would have made the same decision absent the protected conduct for reasons reasonably related to penological interest.'" *Id.* (quoting *Rauser v. Horn*, 241 F.3d 330, 334 (3rd Cir. 2001)).

15

The plaintiff has not alleged any facts supporting his assertion that the defendants retaliated against him because he filed an administrative appeal.

Nor has the plaintiff alleged any facts supporting his assertion that the defendants retaliated against him because his wife is a former Department of Corrections employee.  The plaintiff alleges that his relationship with his wife began nineteen years ago while he was incarcerated at SCI-Huntingdon and his wife was an assistant librarian there.  He alleges that at that time prison officials became suspicious of the relationship, that he was transferred to a different institution, and that his wife resigned because she decided to pursue a romantic relationship with him.  He alleges that after he was denied a recommendation for a commutation defendant Vance stated he might not have received such a recommendation "because of the issue with your wife."  The plaintiff, however, has not alleged when that conversation took place.  Nor has he alleged any facts leading to an inference that the conversation concerned the plaintiff's transfer or the visitation restriction.  And given the plaintiff's allegations in the original complaint that he pleaded guilty to visiting-room

infraction and that he was implicated by another prisoner in an escape plan, the plaintiff has not plead facts to support a reasonable inference that either his transfer or the visiting restriction was in retaliation for any constitutionally-protected conduct.  Accordingly, the amended complaint fails to state a retaliation claim upon which relief may be granted.

The amended complaint also concerns the suspension of the visiting privileges of the plaintiffs.

A prisoner does not retain rights that are incompatible with incarceration, and "freedom of association is among the rights least compatible with incarceration." *Overton v. Bazzetta,* 539 U.S. 126, 131 (2003).  "Some curtailment of that freedom must be expected in the prison context." *Id.*  "The denial of prison access to a particular visitor 'is well within the terms of confinement ordinarily contemplated by a prison sentence,' . . .  and therefore is not independently protected by the Due Process Clause." *Kentucky Dep't of Corr. V. Thompson,* 490 U.S. 454, 460 (1989)(quoting *Hewitt v. Helms,* 459 U.S. 460, 468 (1983)).  "Withdrawing visitation privileges is a proper an even necessary management technique to induce

compliance with the rules of inmate behavior. . . ." *Overton,*
*supra,* 539 U.S. at 134.

Plaintiff Luis Alamo's loss of visiting privileges with
his wife for a limited, albeit indefinite, time does not amount
to an atypical and significant hardship in relation to the
ordinary incidents of prison life. *See Ware v. Morrison,* 276
F.3d 385, 387 (8th Cir. 2002)(holding that 18-month suspension
of a prisoner's visiting privileges with his wife and two other
individuals did not impose an atypical and significant
hardship).

Even assuming that the plaintiff had a liberty interest
in visits with his wife, he has not alleged facts from which it
can reasonably be inferred that he was denied due process.
"Due process is flexible and calls for such procedural
protections as the particular situation demands." *Matthews v.*
*Eldridge*, 424 U.S. 319, 334 (1976) (quoting *Morrissey v.*
*Brewer*, 408 U.S. 471, 481 (1972)).  The following factors are
considered in determining what process is due: 1) the private
interest that will be affected; 2) the risk of an erroneous
determination and the probable value of additional procedural

safeguards; and 3) the government's interest, including the
function involved and the fiscal and administrative burdens
that additional procedures would entail. *Id*. at 335.  The
plaintiff has not alleged that there was not an administrative
procedure available to him to challenge the suspension or that
any such procedure was inadequate.  Accordingly, the amended
complaint fail to state a due process claim upon which relief
may be granted as to plaintiff Luis Alamo.

Similarly, the amended complaint fails to state a due
process claim upon which relief may be granted as to plaintiff
Rita Sabelli-Alamo.  The plaintiff alleges that defendant
Kerestes twice refused to reinstate her visiting privileges.
She has not alleged, however, facts from which it can
reasonably be inferred that there was not an administrative
procedure available to her to challenge the suspension or that
any such procedure was inadequate.  In fact, the original
complaint indicates that she was able to present her position
to prison officials. *See Pfender v. Secretary of PA Dept. of
Corrections,* No. 11-1638, 2011 WL 3890985 at *3 n.3 (3d Cir.

Sept. 28, 2011)(noting that the wife of a prisoner was provided

all the process she may have been due under the circumstance

where she was able to communicate with prison officials by

letter regarding her visiting privileges).  That she was

unsuccessful in convincing them of her position does not lead

to an inference that she was denied due process.

The plaintiffs also raise an equal protection claim.

The equal protection clause "is not a command that all

persons be treated alike but, rather, 'a direction that all

persons similarly situated should be treated alike.'" *Artway v.*

*Attorney General*, 81 F.3d 1235, 1267 (3d Cir. 1996)(quoting

*City of Cleburn v. Cleburn Living Center*, 473 U.S. 432, 439

(1985)).  In order to establish a viable equal protection claim

a plaintiff must show an intentional or purposeful

discrimination.  *Wilson v. Schillinger*, 761 F.2d 921, 929 (3d

Cir. 1985).

20

The plaintiffs have not alleged any facts from which it could reasonably be inferred that they were treated differently than others similarly situated or that the defendants intentionally or purposefully discriminated against them. Accordingly, the amended complaint fails to state an equal protection claim upon which relief may be granted.

Before dismissing a complaint for failure to state a claim upon which relief may be granted under the screening provisions of 28 U.S.C. § 1915A, the court must grant the plaintiff leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hospital*, 293 F.3d 103, 114 (3d Cir. 2002).  We granted the plaintiffs leave to file an amended complaint.  Although they filed an amended complaint, the amended fails to state a claim upon which relief may be granted.  Further leave to amend would be futile.

IV.  Recommendations.


Based on the foregoing, it is recommended that the amended complaint be dismissed and that the case file be closed.


_/s/ J. Andrew Smyser_
J. Andrew Smyser
Magistrate Judge


Dated:  December 30, 2011.


22